UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHALEY MARTINI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No.  4:20 CV 1711 CDP |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff Shaley Martini brings this action under 42 U.S.C. § 405 seeking judicial review of the Commissioner's final decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*  For the reasons that follow, I must reverse the decision and remand for further proceedings.

## Procedural History

On June 20, 2018, the Social Security Administration denied Martini's March 2018 application for DIB in which she claimed she became disabled on February 8, 2018, because of arthritis, spinal stenosis, degenerative disc disease,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

foraminal narrowing, and facet syndrome.  A hearing was held before an administrative law judge (ALJ) on August 12, 2019, at which Martini and a vocational expert testified.  (Tr. 124-52.)  On October 25, 2019, the ALJ denied Martini's claim for benefits, finding that vocational expert testimony supported a conclusion that Martini could perform her past relevant work as a hair stylist.  (Tr. 169-85.)  On August 21, 2020, the Appeals Council granted Martini's request for review of the ALJ's decision, noting that the ALJ erred in determining Martini's date last insured.  (Tr. 258-62.)  On October 5, 2020, the Appeals Council entered a decision denying Martini's claim for benefits, largely adopting the ALJ's findings and conclusions.  (Tr. 1-6.)  The Appeals Council's decision is thus the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

In this action for judicial review, Martini claims that the Commissioner's decision is not supported by substantial evidence on the record as a whole because the Commissioner failed to identify evidence in the record to support the residual functional capacity (RFC) determination; improperly relied on an outdated medical opinion rendered by a non-examining State agency consultant; and improperly discounted her subjective statements of symptoms as well as medical opinion evidence from her treating physician.  Martini also asserts that the Commissioner legally erred in failing to follow the Regulations' requirements in evaluating medical opinion evidence.  Martini requests that I reverse the final decision and

remand the matter to the Commissioner for an award of benefits or, alternatively, for further proceedings. She also requests that, if additional proceedings are warranted upon remand, a medical expert evaluate the objective medical evidence of record and assist the Commissioner in properly determining her RFC.

Because the Commissioner committed legal error in evaluating medical opinion evidence, I will remand the matter to the Commissioner for further proceedings. Upon remand, the Commissioner shall also reassess Martini's RFC and describe how the medical evidence supports her RFC conclusion, with citation to specific medical facts and nonmedical evidence in doing so.

## Medical Records and Other Evidence Before the ALJ

Plaintiff Shaley Martini worked as a hair stylist for thirty years. She had been able to work through back and neck pain for several years, but she stopped working in February 2018 because of worsening pain, including radiating pain to her arms and legs. MRIs of her cervical, thoracic, and lumbar spine showed mild to moderate impairments of the spine, including stenosis, osteoarthritis, and degenerative changes. During an examination in May 2018, Martini's primary care physician, Dr. Michael Shoenwalder, instructed Martini to not lift more than ten pounds or stand longer than one hour at a time. From February through September 2018, Martini's treatment modalities included nerve blocks, injection therapy, and physical and aquatic therapy, from which she obtained some relief.

Medication included Gabapentin and Celebrex, from which she likewise obtained some relief.  Findings from a neurosurgical consultation in September 2018 showed tenderness along the sacroiliac joints and mild limitations in cervical range of motion.  It was determined that she was not a surgical candidate.  In November 2018, Martini underwent right-sided cervical radiofrequency ablation from which she obtained significant relief of her neck pain.  She continued thereafter with injection therapy and nerve blocks to her lumbar spine.  She underwent left-sided radiofrequency ablation of the lumbar spine in March 2019, from which she obtained relief.  In July and August 2019, Martini's treating pain specialist, Dr. Chad Shelton, noted that Martini responded very well to the ablation procedures and continued to do reasonably well overall.

Martini also complained of knee and shoulder pain.  MRIs of the bilateral knees taken in November 2018 showed a tear of the medial meniscus of the right knee with mild cartilage thinning, and mild ligament sprain of the left knee with moderate cartilage thinning and mild edema.  Martini received a steroid injection to the right knee at that time and was advised to focus on resolving her back and neck pain. An MRI of the right shoulder taken in May 2019 showed tendinopathy and bursitis with tear of the labrum.  Martini was diagnosed with right shoulder impingement syndrome and right tennis elbow.  She underwent injection therapy and was given instruction as to home remedies.

With respect to other medical records and evidence of record, I adopt the parties' respective recitations of facts set forth in their unrefuted statements of material facts. (ECF 24-1, 31-2.) These statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for DIB under the Social Security Act, Martini must prove that she is disabled and that her disability began before her insured status expired. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Walker v. Colvin*, 124 F. Supp. 3d 918, 932 (E.D. Mo. 2015). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational

factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

I must affirm the Commissioner's decision if it is not based on legal error and there is substantial evidence on the record as a whole to support the conclusion. *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.  The Appeals Council's Decision

On review of the ALJ's decision, the Appeals Council adopted the ALJ's statements regarding the issues in the case and the evidentiary facts, as well as the

ALJ's findings and conclusions that Martini was not disabled.  (Tr. 4.)  The only disagreement the Appeals Council had with the ALJ's decision was with the date Martini was last insured.  The ALJ had determined the date to be September 30, 2018.  The Appeals Council determined the date to be December 31, 2018.  The Appeals Council concluded, however, that because the ALJ discussed relevant medical evidence in the record that was dated after September 18, 2018, and through December 31, 2018, the ALJ's findings and conclusions remained supported through the actual date last insured, that is, December 31, 2018.  (Tr. 5.)

The Appeals Council based its final decision on the ALJ's findings.  It therefore concluded, as the ALJ did,

- that Martini had not engaged in substantial gainful activity since February 8, 2018, the alleged onset date of disability (Tr. 5, 171);
- that Martini had the following severe impairments:  degenerative disc disease, osteoarthritis, fibromyalgia, and chronic pain syndrome, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 5, 171-73) ;
- that Martini had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), "except frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasional overhead reaching with the right arm, frequent all other reaching bilaterally; no exposure to unprotected heights, hazardous machinery, and only occasional exposure to extreme cold or vibration" (Tr. 5, 173);
- that Martini's RFC did not preclude her from performing her past relevant work as a hair stylist (Tr. 6, 184); and
- that Martini was not under a disability at any time through the date last insured (Tr. 6, 185).

Because the Appeals Council adopted the ALJ's factual findings, reasoning,

and conclusions, I review those findings, reasonings, and conclusions in addressing Martini's claims of error.

C.     Legal Error – Consideration of Medical Opinion Evidence

Martini filed her application for benefits after March 2017. Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this Regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies and their familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [she] considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859

Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-evaluation Regulation was legal error)). *See also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021). ALJs need not explain in their decision how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Here, the record contains a medical opinion rendered June 18, 2018, by Dr. Renu Debroy, a State-agency medical consultant with disability determinations. Based on her review of the record at that time, Dr. Debroy reported that Martini had the medically determinable severe impairment of degenerative disc disease, which limited her to occasional lifting of twenty pounds and frequent lifting of ten pounds. Dr. Debroy opined that Martini could sit for a total of about six hours in an eight-hour workday and could stand and/or walk for a total of about six hours in an eight-hour workday. Dr. Debroy opined that Martini could frequently climb ramps and stairs and could occasionally climb ladders, ropes, or scaffolds. She further opined that Martini could occasionally stoop, kneel, crouch, and crawl. She opined that Martini was limited to frequent reaching overhead bilaterally but otherwise had no manipulative limitations. (Tr. 157-62.) The record also contains the opinion of Robert Cottone, Ph.D., a State-agency psychological consultant with

disability determinations, who opined that Martini's medically determinable mental impairment of depressive disorder was not severe. (Tr. 157-58.)

In her written decision, the ALJ briefly addressed the opinions of these State agency consultants: "[T]he objective medical findings made by the State agency medical and psychological consultants . . . are persuasive as the findings about the claimant's physical and psychological impairments are consistent with the record as a whole and support the residual functional capacity set forth above." (Tr. 183.) That is the extent of the ALJ's discussion of these opinions. Although Martini specifically argues that this cursory statement does not satisfy the ALJ's mandated duty to explain the supportability or consistency factors in evaluating these consultants' opinions (*see* ECF 24 at pp. 4-5), the Commissioner wholly fails to address the argument (*see* ECF 31).

There can be no dispute that the ALJ did not explain in her decision how she considered either the supportability or consistency factor in determining the persuasiveness of the State agency consultant opinions. The ALJ's sprinkling of the words "support" and "consistent" in her cursory treatment of the opinions is insufficient to satisfy the Regulation's requirement that the ALJ "explain" how she considered these factors in determining the persuasiveness of a medical opinion.[2]

---

[2] "*Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). "*Consistency.* The

*See Guess v. Kijakazi*, No. 4:20-CV-887-JTR, 2021 WL 5983193, at *3-4 (E.D. Ark. Dec. 17, 2021). Blanket statements, with no explanation, "will not do." *Post v. Kijakazi*, No. 4:20-CV-315 RLW, 2021 WL 4355349, at *7 (E.D. Mo. Sept. 24, 2021) (internal quotation marks and citation omitted) (it is not enough to merely state that a medical opinion is consistent with the record).

In addition to failing to properly evaluate the medical opinions of the State agency consultants, the ALJ's treatment of Dr. Schoenwalder's May 2018 medical source statement (MSS) likewise runs afoul of the Regulation. In his MSS, Dr. Schoenwalder reported that MRIs of Martini's cervical, thoracic, and lumbar spine showed arthritis, spinal stenosis, and bulging disc; that laboratory testing showed abnormal TSH; and that Martini's symptoms included chronic, generalized joint pain–worse in the spine, chronic fatigue, depression/anxiety, reduced mobility, and insomnia. He opined that Martini's impairments limited her to sitting no longer than thirty minutes at one time, limited her to standing no longer than thirty minutes at one time, and required her to lie down during the day. He also opined that Martini could lift and carry five to ten pounds; could rarely reach above her shoulders and down toward the floor; could rarely handle objects with her fingers;

---

more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

- 12 -

could frequently reach down to waist level; and had difficulty bending, squatting, and kneeling, and with turning at the hip and cervical spine. (Tr. 512-17.) While the ALJ adequately explained why Dr. Schoenwalder's opinions were not consistent with evidence from other medical sources and nonmedical sources in the claim (Tr. 183), the ALJ's mere acknowledgement that Dr. Schoenwalder noted the results of MRIs and laboratory testing does not constitute an explanation of the degree to which this objective medical evidence and Dr. Schoenwalder's explanations support the medical opinions expressed in his MSS. *See* 20 C.F.R. § 404.1520c(c)(1).

The Commissioner argues that when read in its entirety, the ALJ's decision necessarily included an evaluation of the supportability of Dr. Schoenwalder's opinion given that the ALJ's general summary of the record included references to the MRIs and Dr. Schoenwalder's treatment notes. The Regulation, however, directs the ALJ to specifically address and "explain" the supportability of the medical opinion itself. No matter the adequacy of the ALJ's general summary of the evidence of record, she nevertheless did not abide by the Regulation's mandate to "explain" the supportability of Dr. Schoenwalder's opinion in view of such evidence. I must therefore remand the matter to the Commissioner for proper consideration of the medical opinion evidence of record. *Bonnett*, 859 Fed. Appx. at 20.

Because the ALJ failed to properly consider and explain the consistency and supportability of the medical opinion evidence as required by the Regulations, I cannot determine on this record whether the ALJ's acceptance of the State agency consultants' opinions and rejection of Martini's treating physician's opinion is based on substantial evidence on the record as a whole. *See Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1985); *see also Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997). It is not within the province of this Court to speculate as to why the ALJ may have accepted or rejected certain evidence. *Jones*, 65 F.3d at 104.

D.   RFC Assessment

Residual functional capacity is the most a claimant can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff*, 421 F.3d at 793; 20 C.F.R. § 404.1545(a). The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue,* 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). A claimant's RFC is a medical question, however, "that 'must be supported by some medical evidence of

[the claimant's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001)).

As noted above, the ALJ found that Martini had the RFC to perform light work with some climbing, reaching, postural, and environmental limitations. It appears, however, that the ALJ relied on only the State agency consultant's June 2018 opinion to make this finding and, for the reasons set out above, legally erred in doing so. The ALJ did not explain how any other evidence of record supported her assessment. An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7. The ALJ did not undergo this process here. While she thoroughly summarized the medical evidence of record, the ALJ did not explain how she translated her understanding of the medical evidence to support her conclusion that Martini could engage in light work.

Under the Regulations, light work involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Social Security Ruling 83-10p further explains that light work involves standing or walking for "approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. Jan. 1, 1983). Other than her cursory reliance the State agency consultant's opinion, the ALJ does not discuss how the medical evidence of record supports her apparent conclusion that Martini had the ability to engage in the sitting, standing, walking, pushing, or pulling activities required for light work during the relevant period. In the absence of any thoughtful discussion or analysis by the ALJ, I would be required to weigh the evidence in the first instance or review the factual record *de novo* in order to find the ALJ's RFC assessment to be supported by substantial evidence on the record as a whole. This I cannot do. *See Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

I am aware that an ALJ need not "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality." *Noerper*, 964 F.3d at 746. "Something, however, is needed." *Id.* An ALJ may not simply draw

her own inferences about a claimant's functional abilities from medical reports. *Combs*, 878 F.3d at 646.

The absence of evidence translating the medical evidence and subjective complaints into functional limitations, coupled with the ALJ's failure to properly evaluate the medical opinion evidence, leaves me unable to determine whether the RFC assessment was supported by substantial evidence on the record as a whole. *Noerper*, 964 F.3d at 747.  The matter must therefore be remanded to the Commissioner to properly evaluate, identify, and clarify the medical and nonmedical evidence of record that supports her conclusions as to Martini's RFC. Upon remand, the parties shall be provided the opportunity to submit medical evidence that addresses Martini's functional ability to engage in work-related activities during the relevant period, which may include contacting her health care providers or solicit the opinion of a medical expert to clarify what her limitations and restrictions were during such period, in order to ascertain what level of work, if any, she was able to perform.  *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006); *Schmidt v. Berryhill*, No. 4:17CV2375 CDP, 2019 WL 339634, at *6 (E.D. Mo. Jan. 28, 2019).

Because the ALJ evaluated Martini's subjective statements of symptoms against the backdrop of her assessment of the medical evidence of record, any

reassessment of such evidence will necessarily require the ALJ to reevaluate Martini's statements. *See Hawkins v. Saul*, No. 4:20-CV-523 SRW, 2021 WL 3633699, at *9 (E.D. Mo. Aug. 17, 2021). The Commissioner is reminded that her reevaluation of Martini's statements of symptoms must include an express acknowledgement and examination of the factors set out in 20 C.F.R. § 404.1529(c)(3). *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *Miles v. Colvin*, 973 F. Supp. 2d 1030, 1044-45 (E.D. Mo. 2013).

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** to the Commissioner for further consideration consistent with this Memorandum and Order.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of March, 2022.